UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DERRICK MADDOX,

        Defendant.

---

<u>REPORT & RECOMMENDATION</u>

04-CR-6129L

## BACKGROUND

By Order dated August 24, 2004, all pre-trial matters in the above captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 10).

Defendant Derrick Maddox (hereinafter "Maddox") is charged in a four-count indictment. The first count charges Maddox with knowingly possessing two firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(C)(1)(A). The second count charges Maddox with possessing with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Count Three charges Maddox with knowingly possessing two firearms after having been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Docket # 32). The final count charges Maddox with possessing five grams or more of cocaine base, in violation of 21 U.S.C. § 844(a). (Docket # 8). Maddox is alleged to have committed all of the charged offenses on or about August 8, 2004.

Currently pending before this Court is Maddox's motion for a hearing pursuant to

*Franks v. Delaware*, 438 U.S. 154 (1978).[1]  (Docket # 16).  For the following reasons, it is the recommendation of this Court that Maddox's motion be denied.

## FACTUAL BACKGROUND

On August 8, 2004, law enforcement officers conducted a search of the upstairs apartment of 344 Portland Avenue, located in the City of Rochester.  A warrant authorizing the search was issued earlier that day by Monroe County Court Judge Patricia D. Marks.  In the affidavit submitted in support of the warrant, Investigator Ronald Reinstein of the Rochester Police Department affirmed that reasonable cause existed to believe that the items described in the warrant would be found at the premises to be searched.  (Docket # 18, "Reinstein Aff.").  Reinstein attached to his affidavit, and incorporated by reference, supporting depositions of a nine year-old girl (hereinafter referred to as "L.R.")[2], and the girl's mother, Michelle Spirles. (Docket # 18, Ex. 1-3).

**Investigator Reinstein's Affidavit**:  Reinstein affirmed that on August 8, 2004, at approximately 11:11 a.m., the Rochester Police Department received a report of a rape

---

[1] Maddox's omnibus motion also sought, *inter alia*, suppression of statements, *Brady* material, discovery and inspection, *Jencks* material, rulings on evidentiary matters under Rules 404, 608 and 609 of the Federal Rules of Evidence, and the preservation of rough notes.  (Docket # 16).  Each of these requests, with the exception of Maddox's motion to suppress statements, was either resolved by the parties or decided in open court by the undersigned on November 2, 2004.  (Docket # 20).

An evidentiary hearing with regard to Maddox's motion to suppress statements was scheduled to occur before this Court on February 17, 2005.  On that date, the government requested an adjournment because its witness was unavailable due to injury.  (Docket # 28).  The government further advised, through documentation provided by the witness' physician, that the witness would not be available to testify until after June 2, 2005.  (*See* Letter from AUSA Julia Romanow, dated March 2, 2005).  As this Court has advised the parties, Maddox's suppression motion has been transferred to the district court for decision.  The parties should be prepared to address the scheduling of the hearing with the district court at the pre-trial conference.

[2] Considering the age of the witness, she shall be identified in this decision by the initials "L.R."

2

occurring at 344 Portland Avenue. According to Reinstein, Officer Gallipeau responded to that location and spoke with the victim, L.R., a nine year-old girl. (Reinstein Aff. at ¶ 6(A)). L.R. "reluctantly" explained to Gallipeau that she had been sexually abused by a man she knew to be Derrick Maddox, who lived at 344 Portland Avenue. (Reinstein Aff. at ¶ 6(A)).

While Reinstein was speaking with L.R., a male later identified as Maddox, shouted out of an upstairs window at 344 Portland Avenue. Gallipeau responded by asking Maddox to come down to the street so that he could talk with him. Maddox refused. (Reinstein Aff. at ¶ 6(B)). Approximately one half-hour later, a man identifying himself as Maddox walked onto the street and spoke with the officers. (Reinstein Aff. at ¶ 6(C)). Maddox was subsequently arrested and transported to the Monroe County Public Safety Building. (Reinstein Aff. at ¶ 6(D)).

Reinstein affirmed that L.R. was also transported to the Public Safety Building, along with her mother and younger twin sisters. (Reinstein Aff. at ¶ 6(E)). Once there, L.R. again spoke with Reinstein, and she informed him that three days earlier (on Thursday, August 5, 2004), at 344 Portland Avenue, Maddox forced her to place his penis in her mouth until "spit came out of it." L.R. further reported to Reinstein that Maddox had used a handgun to threaten her to perform the above act. Finally, L.R. also stated that Maddox had forcibly removed her "jumper" and then had taken a Polaroid photograph of her. (Reinstein Aff. at ¶ 6(F)).

**L.R.'s Supporting Deposition**: Attached to Reinstein's affidavit was a supporting deposition signed by L.R.. (Docket # 18, Ex. 2, "L.R. Dep."). In the deposition, signed on August 8, 2004, L.R. stated that she was nine years old and that she would be turning

ten in a few days. According to L.R., two days earlier she had informed her mother that something had happened to her at Maddox's house that "was not nice." (L.R. Dep.).

L.R. stated that on that date, while her twin sisters were in a separate room, she was in the living room with Maddox. At approximately noon, Maddox instructed her to clean the room. As she did so, Maddox ordered her to take her clothes off, an order that Maddox allegedly had made before. L.R. refused, which Maddox responded to by slapping her, pulling out a gun and threatening that if she did not do what he said, "he would blow [her] and [her mother's] (*sic*) brains out." According to L.R., the gun was in a room adjacent to the kitchen, which was also where Maddox kept his drugs. She knew this because she had been present when "people came to buy drugs from him" on a prior occasion. (L.R. Dep.).

After L.R. again refused to undress, Maddox grabbed her and forcibly removed her jumper. According to L.R., Maddox then threw her on a bed in the living room and photographed her with a Polaroid camera. While still on the bed, L.R. stated, Maddox made her "put his private in my mouth" until "spit came out of the end." Maddox also put his mouth on L.R.'s "private," which she described as the place where she "go[es] to the bathroom." According to L.R., this was not the first time Maddox had subjected her to such actions. She stated that Maddox had also done so one month earlier while her mother was working, and that the first of such encounters had occurred the prior year. (L.R. Dep.).

Following the alleged assault, L.R. went to the bathroom, brushed her teeth and then joined her sisters in a separate room. L.R. waited until the following day to report the incident to her mother. She explained that she had waited until Maddox left for work to talk to her mother because she was afraid "because he had a gun." (L.R. Dep.).

**Michelle Spirles's Supporting Deposition**: Reinstein's search warrant application also included a supporting deposition signed by L.R.'s mother, Michelle Spirles. (Docket # 18, Ex. 3, "Spirles Dep."). Spirles stated that Maddox had been her boyfriend for the past ten years, lived in the upstairs apartment at 344 Portland Avenue, and is the father of her twin daughters. (Spirles Dep.).

According to Spirles, on the preceding Thursday, she went to Maddox's house because he had been watching her children. When she arrived, she noticed that L.R. was acting oddly, but her daughter would not say why. The following day, after Maddox left for work, L.R. reported to her that he had "made her suck his private and he sucked her." Her daughter also told her that Maddox had taken a photograph of her. Spirles later confronted Maddox, who told her that L.R. had fabricated the story because she was angry with him for reneging on a promise that he would buy new sandals for her and take her to an amusement park. (Spirles Dep.).

Some time later, Spirles spoke on the telephone with her eleven year-old daughter, who lived with her grandmother in Florida. During the conversation Spirles stated that she "knew about what happened between her and [Maddox] because [L.R.] had said [Maddox] touched her." As she was speaking, Maddox grabbed the telephone out of Spirles's hand and threw it against the wall. Maddox then pulled out a gun and stated, "All you bitch[e]s get out of here." According to Spirles, the gun looked like a "police gun" and was stored by Maddox in a jacket in the living room closet. (Spirles Dep.).

## DISCUSSION

Maddox moves this Court for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), claiming that Investigator Reinstein intentionally omitted evidence when applying for the search warrant for his residence. He contends that Reinstein's failure to present the nine year-old witness in person to Judge Marks for an *in camera* examination constituted an intentional omission. He further challenges Reinstein's alleged failure to investigate the minor's claim that the assault occurred at approximately noon. According to Maddox, had such an investigation been conducted, Reinstein would have discovered that he was at work at the time of the alleged assault. This failure to investigate, Maddox claims, constituted an intentional omission, which, according to Maddox, "magnified" the error of Reinstein's failure to present the witness for an *in camera* examination. (Docket # 16).

Under the Supreme Court's holding in *Franks v. Delaware*, "a district court may not admit evidence seized pursuant to a warrant if the warrant was based on materially false and misleading information." *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987) (citing *Franks v. Delaware*, 438 U.S. at 154), *cert. denied*, 507 U.S. 954 (1993). To warrant a *Franks* hearing, a defendant challenging an affidavit must make "a substantial preliminary showing that (1) the affidavit contained false statements made knowingly or intentionally, or with reckless disregard for the truth; and (2) the challenged statements or omissions were necessary to the Magistrate's probable cause finding." *Id.* (citing *Franks*, 438 U.S. at 171-72) (internal quotation omitted). A hearing is required if the defendant provides the court with a sufficient basis upon which to doubt the truth of the affidavit at issue. As explained by the Supreme Court:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171.

A *Franks* hearing is not required where it is sought merely on the basis of an allegation that the information in the search warrant affidavit subsequently proved to be inaccurate, especially where that information derives from a source independent of the affiant. *See id.*, ("[t]he deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant"); *United States v. One Parcel of Property Located at 15 Black Ledge Dr., Marlborough, Conn.*, 897 F.2d 97, 100-01 (2d Cir. 1990) (requirement that information in warrant application be truthful does not mean that every fact must be correct, but rather that information must be appropriately accepted by affiant as true); *United States v. Markey*, 131 F. Supp. 2d 316, 324 (D. Conn. 2001) ("*Franks* is implicated only when the false statement is made by, or the reckless disregard is that of, the affiant. There is no right to a hearing when the challenge is to information provided by an informant or other source."). Maddox has adduced no evidence to suggest that at the time Reinstein submitted his affidavit, he was aware that any of the statements provided by L.R. or Spirles were false or were made with reckless disregard for the truth. *See United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989) ("*Franks* does not require that all statements in an affidavit be true; it simply requires

that the statements be 'believed or appropriately accepted by the affiant as true'") (quoting *Franks v. Delaware*, 438 U.S. at 165), *cert. denied*, 498 U.S. 866 (1990).

Maddox's contention that Reinstein violated *Franks* because he failed to present L.R. *in camera* to Judge Marks at the time he applied for the warrant is without merit.[3] First, the law imposes no such obligation. Under New York law, "Every witness more than nine years old may testify only under oath unless the court is satisfied that such witness cannot, as a result of mental disease or defect, understand the nature of an oath." N.Y. Crim. Pro. Law § 60.20(2) (McKinney's 2003). Only if the witness is younger than nine or the court is satisfied that the witness cannot understand the nature of an oath due to "mental disease or defect," must the court inquire whether she understands the nature of the oath. *Id.* Here, L.R. stated in her deposition that she was nine years old and would be ten "in just a few days." (L.R. Dep.).

Second, I find no evidence to suggest that Reinstein attempted to mislead the court. To the contrary, Reinstein clearly disclosed to the reviewing judge that the witness was nine years old, revealing that fact in both his affidavit and the attached deposition of the witness. Having been apprised of her youth, the reviewing judge was of course free to explore the witness' capacity to understand the oath, including conducting an *in camera* examination had the judge determined one to be appropriate. That Judge Marks chose not to – particularly in view of the details the witness provided to Reinstein that were corroborated by her prior statement to her mother – does not render Reinstein's affidavit wanting or justify a post-warrant *Franks* hearing.

---

[3] In his motion papers, Maddox also argues that the warrant lacked probable cause as a result of this failure. At oral argument, Maddox withdrew that argument.

8

Neither does it demonstrate that the judge abandoned her neutral role in reviewing the application, as Maddox contends.

Similarly without merit is Maddox's contention that Reinstein's failure to adequately investigate this matter entitles him to a *Franks* hearing. L.R.'s supporting deposition states that the incident occurred at approximately 12:00 p.m., a time Maddox claims to have been at work. Although Maddox does not claim that Reinstein knew this alleged fact, he argues that Reinstein would have learned it had he adequately investigated L.R.'s claim. In essence, Maddox claims that Reinstein acted with reckless disregard for the truth by failing to investigate when the assault allegedly occurred before applying for the search warrant. I disagree.

While the Second Circuit has yet to define what constitutes reckless disregard for the truth, *see United States v. Kunen*, 323 F. Supp. 2d 390, 395 (E.D.N.Y. 2004), other Circuits have explained that the appropriate test is, "whether, viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his (or her) statements or had obvious reasons to doubt the accuracy of the information he (or she) reported." *United States v. Schmitz*, 181 F.3d 981, 986-87 (8th Cir. 1999) (citations omitted); *see also Lippay v. Christos*, 996 F.2d 1490, 1500-01 (3d Cir. 1993); *Salmon v. Schwarz*, 948 F.2d 1131, 1140 (10th Cir. 1991); *United States v. A Residence Located at 218 Third Street, New Glarus, Wis.*, 805 F.2d 256, 258 (7th Cir. 1986); *United States v. Kirk*, 781 F.2d 1498, 1503 (11th Cir. 1986).

Here, L.R.'s deposition set forth a detailed description of an alleged sexual assault committed upon her by her mother's boyfriend. For example, L.R. reported that the assault had occurred at Maddox's residence. She explained that she and her younger sisters were staying with Maddox while her mother was at work. (L.R. Dep.). L.R. further stated that while alone in

9

the room with Maddox, he had forcibly removed her clothes, taken a photograph of her, threatened her with a gun, sodomized her and compelled her to sodomize him. On Friday, L.R. told her mother of the assault, explaining that she waited to report the incident until then because she was afraid of Maddox.

Many of the details contained in L.R.'s deposition were apparently corroborated by the accompanying deposition of L.R.'s mother, Michelle Spirles. Spirles stated that on the prior Thursday, she had gone to Maddox's house because he had been watching her children. After arrival, she noticed that L.R. was acting oddly, but her daughter would not explain why. On the following day, after Maddox left for work, L.R. informed her of the sexual assault. (Spirles Dep.). Her daughter reported to her at that time -- as she did later to Reinstein -- that Maddox had sodomized her and forced her to commit an act of sodomy on him and that he had taken a photograph of her. On these facts, I find no reason that Reinstein should have harbored serious doubts as to the truth of L.R.'s allegations. I therefore cannot conclude that Reinstein's failure to investigate the time of the alleged assault before applying for a search warrant justifies a *Franks* hearing.

Judged on this record, I find that Maddox has not made a substantial preliminary showing that Reinstein's affidavit contained false statements made knowingly or with reckless disregard for the truth. *See Franks*, 438 U.S. at 171-72. I thus recommend that Maddox's motion for a *Franks* hearing be denied.

## CONCLUSION

For the foregoing reasons, it is my recommendation that defendant's motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. at 154 **(Docket # 16)** be **DENIED**.

```
                                    Marian W Payson
                                    _____
                                         MARIAN W. PAYSON
                                      United States Magistrate Judge
```

Dated: Rochester, New York
       April 15, 2005.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[4]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                                           Marian W. Payson
                                                          MARIAN W. PAYSON
                                                          United States Magistrate Judge

Dated: Rochester, New York
       April 15, 2005.

---

[4] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).